**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**DENISE D. KRAUSE**                                                                **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO. 3:19-cv-571-HTW-LGI**

**UNIVERSITY OF MISSISSIPPI MEDICAL**
**CENTER; and JOHN DOES 1-5**                                          **DEFENDANTS**

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF DENISE D. KRAUSE'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

COMES NOW the plaintiff, Dr. Denise D. Krause, by and through counsel and files this Memorandum of Law in Support of Plaintiff Denise D. Krause's Response in Opposition to Defendant's Motion for Summary Judgment pursuant to the Federal Rules of Civil Procedure, and would show unto the Court as follows:

**<u>INTRODUCTION</u>**

This action has been brought by Dr. Denise D. Krause, Plaintiff, against the University of Mississippi Medical Center ("UMMC"), asserting claims under Title VII for sex discrimination, harassment, and hostile work environment as well as due process violations. Dr. Krause, a female professor, researcher, and epidemiologist, began her career with UMMC over twenty-four years ago. During Dr. Krause's employment with UMMC she worked in various capacities and received numerous promotions. In fact, Dr. Krause began her career with UMMC in 1993 as a secretary but continued her education and obtained a Master of Sciences degree in Preventive Medicine and a Doctor of Philosophy degree in Epidemiology, Preventive Medicine.

1

Despite Dr. Krause's stellar employment record, she was not treated the same as her male counterparts, and instead, she was discriminated against on the basis of her sex, female, by UMMC. She was subjected to unfair treatment, harassed, and experienced severe hostility in the workplace that was not encountered by her male counterparts. She was not given the same incentives, salary enhancements, or options as given to her male counterparts.

UMMC and its faculty, staff, and/or administrators created a hostile work environment and subjected Dr. Krause to harassment on the basis of her gender. UMMC was aware of and supported this conduct. Further, Dr. Krause, a tenured Professor, was provided no due process by UMMC in terminating her from employment. Rather, UMMC just refused to communicate with Dr. Krause and instructed her superiors and co-workers not to communicate with her, forcing Dr. Krause into early retirement. The hostile work environment and discrimination endured by Dr. Krause has caused her severe financial hardship and emotional distress.

Dr. Krause has put forth substantial summary judgment evidence in the form of affidavits or declarations, deposition testimony, and documents and/or records, to establish that Defendant's proffered reasons for her termination/constructive discharge are false and that an inference of discrimination, harassment, and hostile work environment exists. The evidence before the Court creates questions of fact for a jury as to Dr. Krause's claims in this matter. Accordingly, Defendant's Motion for Summary Judgment must be denied.

## STATEMENT OF FACTS

Dr. Krause is a female epidemiologist and researcher who rose through the ranks at UMMC from secretary to tenured Professor during her twenty-four (24) year tenure. *See* Exhibit "A", Deposition of Dr. Denise D. Krause taken May 4, 2021, with exhibits, p. 37-54. During her employment with UMMC, she worked in various capacities and received numerous promotions.

*Id*.   Although her record with UMMC was unblemished, Dr. Krause was forced to endure discrimination, a hostile work environment, harassment, and ultimately, constructive discharge from her employment with UMMC.  *Id*. at p. 171-172.

***Denial of Research Salary Enhancement - Discrimination***

On or about July 2017, Dr. Krause was denied a research salary enhancement by UMMC to increase her overall salary, but the enhancement was approved for several male faculty members within her School at UMMC – the School of Dentistry.  *Id*. at p. 103-106.  Dr. Krause was also denied the year prior.  *Id*.  Dr. Krause was equally qualified and followed the same guidelines as the male faculty members who were approved; however, Dr. Krause was rejected and discriminated against as a result of her sex.  *Id*.;  *see also* Exhibit "F", Declaration of Dr. Warren May.

Dr. Warren May, former Professor of Biostatistics at UMMC stated that he "received a monetary incentive based on a percentage of [his] FTE, which added a substantial amount to [his] paycheck.  Dr. Krause, who was also eligible for this incentive based on the policy established at that time and did similar work as co-chair, was denied that incentive."  *See* Exhibit "F", Declaration of Dr. Warren May.  Dr. May, a male, addresses the unfair treatment of Dr. Krause, a female, calling it "patently unfair" and stating that "[i]t bears considering why she, as the only female in her unit, was seemingly compensated differently than others."  *Id*.  Dr. May also declares that Dr. Krause "was not compensated at the same levels as other faculty with the reasons being unclear".  *Id*.  Well actually it is clearly discrimination when the only female with similar work is denied an enhancement, but the males are granted the salary enhancement.

Dr. Krause's supervisor and department chair, Dr. Jason Griggs,  Associate Dean for Research for the School of Dentistry, certainly thought Dr. Krause qualified for and should have

received the research salary enhancement.  Dr. Griggs testified that Dr. Krause was put up by him for a RAS or a research administrator salary supplement.  *See* Exhibit "C", Deposition of Dr. Jason Griggs, p.38.  Dr. Griggs was "stunned" that Dr. Krause did not receive the salary enhancement and tried to get the decision reversed.  *Id.* at Exhibit 2.  Dr. Griggs also stated that "Dr. Summers has acknowledged the discrepancy between how his office is treating Dr. Roach's and Dr. Krause's salary supplements".  *Id.* at Exhibit 3.  Dr. Roach, a male, was approved for the salary enhancement, and UMMC acknowledged this discrepancy.  *Id.* at p. 47.  Dr. Griggs further states that "[i]t's interesting how many times since I've moved to Mississippi the various service depts [*sic*] have told me that there is a law or policy against something that turns out to actually be allowable." *Id.* at Exhibit 4, p. 53.  Dr. Griggs testified that he was trying to increase Dr. Krause's salary through multiple avenues, and he was "suspicious that we're being told that we can't do everything we want to do for Dr. Krause".  *Id.* at p. 50-53.  Dr. Griggs did not believe the responses that he was receiving as to why Dr. Krause was not receiving salary supplements.  *Id.*

It is also of note that Dr. Krause received an award through UMMC in 2007 for the same type of research and grant that UMMC was now denying Dr. Krause a salary enhancement for in 2016 and 2017 but awarding to males.  *See* Exhibit "A", p. 122-124; *see also* Exhibit "F".  Dr. Francis G. Serio, former Chair of the Department of Periodontics and Preventive Sciences in the School of Dentistry, stated that he supported Dr. Krause at that time to receive a research salary enhancement, and there was discussion as to whether her work with the Mississippi Department of Health was research.  *See* Exhibit "G", Declaration of Francis G. Serio, DMD, MS, MBA.  Dr. Serio stated that Dr. Krause's research at that time "was not the typical basic sciences research grant with which UMMC was familiar; it did not pay indirect costs to the University; and it was coming from a Mississippi state organization, not a federal institution such as the National

4

Institutes of Health." *Id*. It was determined then "that the project did indeed qualify as research and she was awarded the research salary enhancement. It was also determined that the project would count toward the Excellence in Research Award Program." *Id*. This contradicts every basis UMMC now asserts for denying Dr. Krause the enhancement in 2016 and 2017[1] with it being the same type of research and grant for which she qualified for an enhancement in 2009. *Id*.; *see also* Exhibit "A", p. 123-126.

Further, Defendant attempts to make much to do about Dr. Krause being the second highest paid member of her Department. However, she is being compared to new faculty at the time and to faculty without administrative titles or appointments such as Dr. Krause holding an administrative title and being a tenured full professor. *See* Exhibit "A", p. 115-116. She was performing more work to make more money. *Id*. This is not a justification to pay her less than she deserves. *See also* Exhibit "F" (Krause "did not receive the monetary compensation consistent with her efforts".). It is clear that her supervisor was proposing that she make even more money including the research salary enhancement which was denied. *See* Exhibit "N", Salary projection for Dr. Denise Krause from supervisor, Dr. Jason Griggs, including research salary enhancement.[2] On June 15, 2017, Dr. Griggs sent Dr. Krause projected salary information for the next fiscal year including the research salary enhancement. *Id*. He again did not think she would possibly be denied as he included it in her projection. *Id*. It was also acknowledged that Dr. Krause had enough funds to pay the supplement from her grant. *Id*. Additionally, Dr. Griggs sent a PAR, or personnel action request, to Kristin Nalls, Director of Operations in the Business Office of the

---

[1] UMMC provides conflicting reasons for denial of the salary enhancement. *See* Exhibit "A" at exhibits 12-13; *see also* Exhibit "E" at p. 26.

[2] Contrary to Defendant's assertions, a review of Dr. Griggs' deposition testimony reflects that at the times relevant to the claims herein his reviews of Dr. Krause's performance were favorable, and he put her up for promotion to full professor. *See* Exhibit "C" at p. 21, 29-35, Exhibit 1.

School of Dentistry, to process Dr. Krause's salary enhancement.  *See* Exhibit "I" Deposition of Kristin Nalls, p. 14-15.  Ms. Nalls at some point was instructed not to process it although it had already been approved by not only Dr. Griggs but by Dr. Felton, Dean of the School of Dentistry. *Id*. at p. 15-17.  Ms. Nalls testified that Dr. Griggs told her the salary enhancement was denied as not being research which the evidence here contradicts.  *Id*.  Simply, there was no legitimate non-discriminatory reason for the denial of Dr. Krause's research salary enhancement.

### *Dr. Krause's Proposal to Work Remotely or Transfer*

Dr. Krause had been hoping to relocate to Oregon and had discussed this with her supervisor, Dr. Griggs, several months in advance.  *See* Exhibit "A" at exhibit 10.  Dr. Griggs noted in Dr. Krause's 2016-2017 faculty review or evaluation that Dr. Krause needed to decide whether she will relocate to Oregon between now and September 2017.  *Id*.  He specifically wrote that Dr. Krause should submit a written plan by June 1, 2017, if she still planned to relocate.  *Id*. Dr. Krause did exactly that.  *See* Exhibit "L", Proposal from Dr. Denise Krause as to relocation and related email correspondence.  On June 1, as requested, Dr. Krause provided Dr. Griggs with her proposal containing three (3) proposed options as to her role and involvement with UMMC upon her moving to Oregon.  *Id*.  She proposed to continue working full-time with UMMC remotely, likely involving a transfer within UMMC; or she proposed working part-time retiring on June 30, 2018, at which time she would have qualified for full retirement benefits from her highest years of wages; or lastly, retirement effective June 30, 2018, and becoming Professor Emeritus. *Id*.

On the same day the proposal was submitted, Dr. Griggs responded to Dr. Krause that he had started checking with HR to see how much of the proposal was allowable, and HR was surprisingly receptive.  *Id*.  Dr. Krause then began furthering her plans to relocate, but she was

ultimately informed that she could not work remotely through the School of Dentistry as Dr. Felton did not support remote work. At that point, Dr. Krause was in communication with other Schools within UMMC to transfer her position and tenure with the knowledge of Dr. Griggs and Dr. Felton. *See* Exhibit "A", p. 138-139. Male professors at UMMC were allowed to work remotely from out of state, but Dr. Krause was not allowed this opportunity by UMMC. *See* Exhibit "H", Declaration of Dr. Bradley Brimhall ("After I moved out of state, I stayed connected to UMMC at 5% employment effort working for UMMC for over a year after my physical exit from UMMC and Mississippi.").

Conversations continued as to Dr. Krause's ability to transfer her position to another School; however, Dr. Krause had to begin preparation for enrolling her son in school in Oregon. *See* Exhibit "A" at p. 141-142. Ultimately once in Oregon, Dr. Krause was informed by Dr. Felton that he would not authorize a transfer either. *See* Exhibit "E", Deposition of Dr. David Felton, p. 7. Dr. Felton, however, acknowledged that there was no UMMC policy that prevented Dr. Krause from transferring to another School. *Id*. at p. 10. He even agrees that Dr. Krause was not similarly situated to those in the School of Dentistry and aligned best with the School of Population Health. *Id*. However, Dr. Krause's transfer request was denied. *Id*. at p. 11-13.

*Denial of Use of Accumulated Leave Time and Reversal of Leave Pay – Harassment and Discharge*

In order to enroll her son in school in Oregon and while communications were ongoing as to Dr. Krause's future with UMMC, she submitted leave requests in the usual manner – which was to simply send to Dr. Griggs' assistant or drop in the basket on the assistant's desk. *See* Exhibit "A", p. 162-163; *see also* Exhibit "J", Leave request forms. Molly Brasfield, in Human Resources, communicated to Dr. Krause that her leave requests through the end of September were being

denied. *Id*. at p. 165, 205; *see also* Exhibit "D", Deposition of Molly Brasfield at Exhibit 1.  This was a great shock to Dr. Krause, because she had never had leave denied previously and followed the same, usual and customary process within her department. *Id*.

Dr. Krause was told by Dean Felton that retirement was her best option at this point and to pick a retirement date which she did – June 30, 2018. *See* Exhibit "P", Email correspondence regarding remote work and lave; *see also* Exhibit "A" at p. 169.  However, Ms. Brasfield then cut off all communication between Dr. Krause and her supervisors although Dr. Krause was still a UMMC employee.  This prevented Dr. Krause from finalizing the terms of her retirement and additional leave requests.  Ms. Brasfield then denied Dr. Krause the use of her accumulated leave to reach her proposed retirement date.  Dr. Krause had over a year of accrued leave time, certainly enough leave time for the ten month period needed.  *See* Exhibit "K", Email correspondence regarding leave time/requests for leave; *see also* Exhibit "A" at p. 169, 205.  This denial even goes against Dr. Felton's position that Dr. Krause could "work with HR to see how to best use her vacation/sick leave to her advantage." *Id*.  This denial of use of accrued leave ultimately forced Dr. Krause to move her retirement date to October 1, 2017.  *See* Exhibit "P".  With Dr. Krause being placed on uncompensated leave for several weeks and UMMC refusing to communicate with her regarding her leave, her pay, her retirement, or her position with UMMC, Dr. Krause had no other option for financial support other than to draw her retirement early by resigning.  *See* Exhibit "A".

Male faculty at UMMC including in the School of Dentistry had been allowed to use over a year of saved vacation and sick leave prior to retirement.  *See* Exhibit "T", Declaration of Ray Holder, MS, DMD.  Dr. Holder had over a year of saved vacation and sick leave when he announced his retirement and was told by Human Resources to "burn" it up. *Id*.  He took the leave

prior to his retirement upon the recommendation of Human Resources, but Dr. Krause, a female, was not given this option. *Id*. As a woman or female employee of UMMC, Dr. Krause was clearly treated differently than her male colleagues. Males were allowed to take leave and paid full salaries for lengthy periods of time, but Dr. Krause was denied leave and discriminated against because of her sex. *See* Exhibit "A".

The harassment and hostility did not stop there. UMMC began locking Dr. Krause out of her email account and requesting the return of all UMMC property prior to her last day. *See* Exhibit "M", Email correspondence regarding return of property to UMMC and leave payment reversal by UMMC; *see also* Exhibit "O", Email correspondence with Human Resources and Legal Department; *see also* Exhibit "P". The emails reflect that Dr. Krause was attempting to return all property in her possession, but UMMC delayed in responding to her. *Id*.; *see also* Exhibit "A", p. 233. Then, following her last day of active employment, Dr. Krause was to be paid for two hundred and forty (240) hours of unused and accrued leave time. *Id*.; *see also* Exhibit "A", p. 235-237. The funds were deposited into Dr. Krause's bank account on schedule, but then, four days later, on or about October 30, 2017, the payment was reversed which caused Dr. Krause significant financial hardship as she had relied on the funds to purchase a vehicle and a larger camper to live in. *Id*. UMMC later sent correspondence alleging that the payment was reversed because Dr. Krause cleared her laptop. *Id*. That was subsequently broadened to UMMC needed access to all Dr. Krause's research. *Id*. However, it was simply harassment in that UMMC did not return Dr. Krause's leave pay to her until two (2) years after UMMC received all requested items and information. *Id*.

### *Software licensing*

The record here is clear that, although UMMC licensed the software of similarly situated

male faculty such as Dr. Robert Hester, Dr. Krause was never provided an executed licensing agreement for her Mississippi Mapper software. *See* Exhibit "B", Deposition of Dr. Krause taken May 25, 2021, with exhibits, p. 9; see also Exhibit "A", p. 190-198, 253. Dr. Krause hired an attorney and communication went back and forth for months. *See* Exhibit "Q", Email correspondence regarding software licensing. Then, there was no further communication from UMMC as to the licensing agreement. In fact, as evidenced from the correspondence following Dr. Krause's separation from UMMC, her leave payment was reversed to assure UMMC had access to her research and software without a licensing agreement. *See* Exhibits "M", "O", and "P".

## SUMMARY JUDGMENT STANDARD

Summary judgment should only be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when ... both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

In the present case, Plaintiff has gone beyond the pleadings providing the Court with

10

contradictory evidence in the form of documents, correspondence, declarations and deposition testimony showing that there are genuine issues of fact regarding whether Defendant is entitled to judgement as a matterof law on Plaintiff's claims in this matter. Accordingly, Defendant's Motion for Summary Judgment should be denied.

## ARGUMENT AND AUTHORITIES

### I.     Prima facie case of sex discrimination.

Title VII discrimination can be established through either direct or circumstantial evidence. *Laxton v. Gap*, Inc. 333 F.3d 572, 578 (5th Cir. 2003). Under the *McDonnell Douglas* framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination. *McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973). To establish a prima facie case of discrimination, a plaintiff must show that she: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *Id.*

Here, Dr. Krause is a member of a protected group based on her sex, female. It is undisputed that she was qualified for her positions with UMMC, and she was forced to prematurely resign or retire due to UMMC's refusal to communicate with her and denial of her use of accrued leave time. The record is complete with references to Dr. Krause being treated less favorably than her male colleagues. Males were provided the research salary enhancement but Dr. Krause was denied. Males were allowed to work remotely from out of state but not Dr. Krause. Males were allowed to use a year of accrued leave time but not Dr. Krause. Males received licensing agreements, but again, not Dr. Krause, a female. Plaintiff has satisfied all

11

elements of her prima facie case of sex, or gender discrimination.

Plaintiff suffered an adverse employment action and was treated less favorably than other similarly situated employees.   Dr. Krause was forced to retire prematurely; she endured harassment from Human Resources including having her final leave payment reversed and not returned for two years; she was forced to prematurely return property while still an employee; she was denied remote work but males allowed; she was denied a research salary enhancement but males awarded; she was denied use of accrued leave but males granted a year of leave time; and she was cut off from communication with her superiors as to her employment or grievances. Dr. Krause was forced to endure this intimidation and harassment by UMMC.  The record supports as cited to herein that males were not treated in the manner in which Dr. Krause was treated.  *See*  Exhibits "F", "G", "H", and "T".  The declarations provided along with Dr. Krause's testimony that she was treated differently than her male colleagues confirm that males were treated more favorably and not harassed like Dr. Krause nor denied benefits.  Plaintiff has established prima facie cases of sex discrimination under Title VII both in her constructive discharge from employment with UMMC and in her denial of employment related benefits provided to male employees of UMMC.

## II.    Pretext.

Because Dr. Krause has presented sufficient evidence to establish a prima facie case of her gender discrimination claims, Defendants are required to put forth a legitimate non-discriminatory reason for her termination. *McDonnell Douglas Corp.,* 411 U.S. at 802.  Plaintiff then bears the burden to establish that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods, Inc.,* 530 U.S. 133 at 143 (2000). A plaintiff may establish pretext either through evidence of disparate treatment or by

12

showing that the employer's proffered explanation is false or "unworthy of credence." *Wallace v. Methodist Hospital System,* 271 F.3d 212 at 220 (5th Cir.2001); *Reeves*,530 U.S. at 143. An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir.2002). Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. *Id.* at 897. No further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation." *Reeves*, 530 U.S. at 147-48.

In *Laxton,* a terminated retail manager sued her former employer alleging violation of the Pregnancy Discrimination Act. *Laxton,* 333 F.3d at 580-81. The Court of Appeals held that: whether the employer's proffered reason for termination was pretextual was issue for jury, based on fact that certain alleged violations involved arguably authorized conduct while others were shown to be false or could have been found to be false. *Id.*   In the present case, Plaintiff has set forth evidence that each of Defendant's reasons for termination or denial of benefits was pretext as males were allowed the benefits that Dr. Krause was denied. Like the employee in *Laxton,* Dr. Krause clearly rebuts Defendant's proffered justifications for her termination and denial of benefits.  There was no policy against remote work because a similarly situated male was allowed to work from another state.  It could not be said that Dr. Krause did not qualify for the research salary enhancement when similarly situated males qualified.  There was no policy against using ten months of leave prior to retirement when a similarly situated male was allowed to use a year of leave.  There was no basis to deny Dr. Krause a licensing agreement when

13

provided to a similarly situated male.  There was no basis for depositing accumulated leave into someone's account and then reversing it when the record shows that the data or research sought was already in UMMC's possession as exhibited in emails and testified to by Dr. Krause.  Dr. Krause has offered substantial record evidence that Defendant's proffered reasons are false such that her discrimination claims must survive summary judgment.

**III.  Dr. Krause's Hostile Work Environment Claim Survives Summary Judgement.**

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986).  To prevail on a hostile work environment claim, a plaintiff must prove that: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002).  We determine whether a hostile work environment exists using a totality-of-the- circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating ... and whether it unreasonably interferes with an employee's work performance. *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 347 (5thCir. 2007) (ellipsis in original) (internal citation and quotation marks omitted). A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.,* 347 F.3d 130, 138 (5th Cir. 2003).

The above and foregoing actions certainly show a pattern of hostility and harassment

14

toward Dr. Krause in numerous aspects of her employment with UMMC.  Dr. Krause was further harassed following her move to Oregon.  Just a review of the emails between Dr. Krause and Molly Brasfield show harassment and a hostile work environment.  Dr. Krause was cut off from communication with her superiors; her leave payment was reversed and not returned for two (2) years; Dr. Krause was denied remote work while males were allowed to work remotely; Dr. Krause was not allowed to use accrued leave time while males were allowed; and Dr. Krause was denied a research salary enhancement granted to males.  This harassment of Dr. Krause was severe and caused her extreme financial hardship. *See* Exhibit "A".

Dr. Krause's working conditions at the point of her retirement were "so intolerable that a reasonable person would have felt compelled to resign." *Vallecillo v. United States Department of Housing & Urban Development*, 155 Fed. Appx. 764, 768 (5th Cir. 2005); see also, *Pennsylvania State Police v. Suders*, 542 U.S. 129, (2004); *see also, Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir.1997); *Ward v. Bechtel Corp*., 102 F.3d 199, 202 (5th Cir.1997); *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir.1994). To determine if the person has been constructively discharged, the court looks at these factors "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off, regardless of whether the offer was accepted." The court can consider these factors in combination or singularly. Dr. Krause's being cut off from all work, denied paid leave, and harassment to encourage early retirement resulted in Dr. Krause being constructively discharged in accordance with the factors.

## IV.    Denial of Due Process.

Dr. Krause was not provided due process by UMMC in terminating her from employment.

Rather, UMMC just refused to communicate with Dr. Krause and instructed her superiors and co-workers not to communicate with her. UMMC asserts that Dr. Krause never filed a grievance with respect to her complaints. However, Dr. Krause previously filed a grievance, and UMMC failed to act timely. *See* Exhibit "R", Correspondence regarding 2012 grievance. The correspondence reveals that Dr. Krause repeatedly followed up with UMMC to no avail and with no corrective action for the wrongs she endured. *Id.* This was further harassment endured by Dr. Krause and one of the reasons not to expect results through that process.

Dr. Krause, in fact, requested information to file a grievance related to denial of her leave request but was only sent a link to an online form. *See* Exhibit "A", p. 240; see also Exhibits "M", "O", and "P". The form could only be submitted electronically through an employee login, and Dr. Krause was stripped of her email account and credentials. *Id.* She was also cut off from communicating with her superiors. *Id.*

Dr. Krause had a property interest in her employment and was terminated by UMMC without notice and without hearing, infringing upon her rights. *See* Exhibit "A" at exhibit 31. UMMC owed a duty to Dr. Krause to provide her notice and the opportunity to be heard. Dr. Krause was terminated in violation of her due process rights. UMMC knowingly failed to comply with its own policies and procedures in terminating Dr. Krause. *Id.*

## V.       EEOC Charge of Discrimination.

Defendant argues that Plaintiff should not be able allege the denial of her licensing agreement as a basis for her claim of discrimination or use certain aspects of her employment history to further support her claims.

> On one hand, the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir.1970). On the other hand, the

"primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788–89. To reconcile these policies, **this court construes an EEOC complaint broadly** but in terms of the administrative EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *Sanchez,* 431 F.2d at 466. We use a "fact-intensive analysis" of the administrative charge that looks beyond the four corners of the document to its substance. *Id*. In sum, **a Title VII lawsuit may include allegations "like or related to allegation[s] contained in the [EEOC] charge** and growing out of such allegations during the pendency of the case before the Commission." *Id*.

*McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (emphasis added).  This Court previously addressed the scope of Plaintiff's Charge in its Order denying Defendant's Motion to Dismiss, or Alternatively, for Partial Summary Judgment.  [Doc. 48].  The Court in analyzing Dr. Krause's EEOC Charge stated that it embraced "a potpourri of alleged discriminatory work-related complaints" that "broadly place into dispute virtually the whole of plaintiff's work life and, if true, would posture a hostile work environment."  *Id*. at p. 6.; *see also* Exhibit "S", EEOC Charge of Discrimination.

## CONCLUSION

Dr. Krause has provided substantial evidence to establish that genuine issues of material facts exist regarding her claims in this matter.  For the reasons, submitted above, as well as the exhibits to Plaintiff's Response to Defendant's Motion for Summary, Defendant's Motion for Summary Judgment should be denied in its entirety.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Dr. Denise D. Krause respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment.  Plaintiff also requests all other relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED, this the 23rd day of July, 2021.

17

**DENISE D. KRAUSE, PLAINTIFF**

By: */s/Lilli Evans Bass*

Lilli Evans Bass (MSB #102896)


OF COUNSEL:

Lilli Evans Bass, Esq.
**BROWN BASS & JETER, PLLC**
1755 Lelia Drive (39216)
Post Office Box 22969
Jackson, Mississippi 39225
Telephone:  (601) 487-8448
Facsimile:  (601) 510-9934
bass@bbjlawyers.com
*Counsel for Plaintiff*

18

## CERTIFICATE OF SERVICE

I, Lilli Evans Bass, attorney for the Plaintiff, do hereby certify that I have this day caused to be served by the ECF electronic filing system a true and correct copy of the above and foregoing document to the following counsel of record:

TIMOTHY M. THREADGILL (MSB No. 8886)
Tim.Threadgill@butlersnow.com
ROBIN TAYLOR (MSB No. 100195)
Robin.Taylor@butlersnow.com
MARCELLUS D. CHAMBERLAIN (MSB No. 105672)
Marc.Chamberlain@butlersnow.com

SO CERTIFIED ON THIS, the 23rd day of July, 2021.

*/s/ Lilli Evans Bass*
Lilli Evans Bass, Esquire